1   EDMUND G. BROWN JR.
    Attorney General of the State of California
2   DANE R. GILLETTE
    Chief Assistant Attorney General
3   GERALD A. ENGLER
    Senior Assistant Attorney General
4   PEGGY S. RUFFRA
    Supervising Deputy Attorney General
5   GREGORY A. OTT
    Deputy Attorney General
6   State Bar No. 160803
        455 Golden Gate Avenue, Suite 11000
7       San Francisco, CA 94102-7004
        Telephone: (415) 703-5964
8   Fax: (415) 703-1234
        Email:  gregory.ott@doj.ca.gov
9   Attorneys for Respondent

10

11                  IN THE UNITED STATES DISTRICT COURT

12              FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                        SAN FRANCISCO DIVISION

14   **MARLON MORRIS,**                          C 08-2005 PJH (PR)

15                              Petitioner,       **MOTION TO DISMISS PETITION
                                                  FOR WRIT OF HABEAS CORPUS
16              **v.**                            AS UNTIMELY**

17   **J. WALKER, Warden,**

18                              Respondent.

19

20          California state prisoner Marlon Morris ("petitioner") has filed a petition for writ of

21   habeas corpus in this Court pursuant to 28 U.S.C. §§ 2241 & 2254(d).  Respondent hereby moves

22   this Court for an order dismissing the petition on the ground that it is untimely.  *See* 28 U.S.C. §

23   2444(d)(1).  A motion to dismiss in lieu of a an answer on the merits is appropriate where the

24   petition is procedurally defective.  *See White v. Lewis*, 874 F.2d 599, 602 (9th Cir. 1989); *O'Bremski

25   v. Maass*, 915 F.2d 418, 420 (9th Cir. 1990); Rules Governing 28 U.S.C. § 2254 Cases, Rule 4 and

26   Advisory Committee Notes.  Respondent has not noticed this motion for hearing as petitioner is in

27   custody and not represented by counsel.

28

1

## PROCEDURAL HISTORY

2        On March 13, 2000, a San Francisco County Superior Court jury convicted petitioner of

3  carjacking and two counts of second degree robbery, with an enhancement for weapon use and one

4  "strike" prior conviction and one prior prison term. Exh. A at 1-2; *see* Cal. Penal Code §§ 212.5,

5  215, 667(a), 667.5(b), 1170.12(b)-(c), 12022(b). Petitioner was sentenced to twenty-seven years and

6  four months in prison. Exh. A at 1.

7        On September 9, 2002, the California Court of Appeal affirmed petitioner's judgment in

8  an unpublished decision. Exh. A. The California Supreme Court denied review on November 20,

9  2002. Exh. B.

10        On or after May 17, 2007 (signature date), petitioner filed a petition for writ of habeas

11  corpus in San Francisco County Superior Court. Petition for Writ of Habeas Corpus, San Francisco

12  County Superior Court (attached to Petition); Cover Letter to San Francisco County Superior Court

13  (dated May 17, 2007) (attached to Petition). That court denied the petition on July 23, 2007. Order,

14  San Francisco Superior Court (filed July 23, 2007) (attached to Petition).

15        On September 6, 2007, petitioner filed a petition for writ of habeas corpus in the California

16  Court of Appeal. Exh. C. That court denied the petition on the same day. Exh. C.

17        On September 26, 2007, petitioner filed a petition for writ of habeas corpus in the

18  California Supreme Court. Exh. D. That court denied the petition on March 12, 2008. Exh. D.

19        On April 17, 2008, petitioner filed the instant petition.

20

## ARGUMENT

21        The petition was filed beyond the one-year statute of limitations. It must be dismissed.

22        Petitioner's 28 U.S.C. § 2254 petition is governed by the Antiterrorism and Effective

23  Death Penalty Act of 1996, which imposes a one-year statute of limitations on the filing of federal

24  habeas petitions. 28 U.S.C. § 2244(d)(1). Here, the limitations period commenced against petitioner

25  on February 18, 2003, ninety days after the California Supreme Court denied review, when the time

26  for filing a petition for certiorari expired. The limitations period expired a year later, on February

27  18, 2004. *Bowen v. Roe*, 188 F.3d 1157, 1158-59 (9th Cir. 1999); Sup. Ct. R. 13. As petitioner filed

28  the instant petition in April 2008, it is untimely by several years. Although petitioner commenced

1   collateral review in state court in 2007 by filing a series of habeas petitions, those filings did not toll

2   the statute of limitations, as the limitations period had already expired years earlier.  *See* 28 U.S.C.

3   § 2244(d)(2); *Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003).

4          Petitioner may rejoin that his claim relies upon a right "newly recognized by the Supreme

5   Court and made retroactively applicable to cases on collateral review," 28 U.S.C. § 2244(d)(1)(C),

6   and thus that the limitations period did not commence against him until much later than 2003.

7   Specifically, petitioner claims he improperly received an upper/aggravated term on his sentence for

8   carjacking, and cites *Cunningham v. California*, 549 U.S. 270 (2007), *Blakely v. Washington*, 542

9   U.S. 296 (2004), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  Petition at 6-7.

10         Petitioner cannot invoke § 2244(d)(1)(C), as that provision is inapplicable on its face.

11  *Cunningham v. California*, 549 U.S. 270, which directly addressed the constitutionality of

12  California's sentencing scheme, has not been "made retroactively applicable to cases on collateral

13  review," § 2244(d)(1)(C).  *See Fennen v. Nakayema*, 494 F. Supp. 2d 1148, 1155-56 (E.D. Cal.

14  2007); *Bassett v. Adams*, 2008 U.S. Dist. LEXIS 39704, *3 (E.D. Cal. 2008); *Cavazos v. Martel*,

15  2008 U.S. Dist. LEXIS 40075, **12-15 (C.D. Cal. 2008); *McNeal v. Adams*, 2008 U.S. Dist. LEXIS

16  32569, **2-3 n.4 (E.D. Cal. 2008); *see also Schardt v. Payne*, 414 F.3d 1025, 1036 (9th Cir. 2005)

17  (holding that *Blakely v. Washington*, 542 U.S. 296 (2004), does not apply retroactively to cases on

18  collateral review in a 28 U.S.C. § 2254 proceeding); *United States v. Cruz*, 423 F.3d 1119, 1121 (9th

19  Cir. 2005) (holding that *United States v. Booker*, 543 U.S. 220 (2005), does not apply retroactively

20  to cases on collateral review); *Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1246 (9th Cir. 2005)

21  (holding that *Apprendi v. New Jersey*, 530 U.S. 466 (2000) does not apply retroactively to cases on

22  collateral review).  Petitioner cannot rely on *Blakely v. Washington*, 542 U.S. 296, for a delayed

23  commencement of the limitations period, for the same reason:  It does not apply retroactively to

24  cases that became final before its 2004 issuance.  *Schardt v. Payne*, 414 F.3d at 1036.

25         Petitioner cannot rely on *Apprendi v. New Jersey*, 530 U.S. 466, to invoke §

26  2244(d)(1)(C), for the simple reason that it issued in 2000, *before* petitioner's conviction became

27  final.  Thus, as to *Apprendi*, even if, arguendo, it could be used to support petitioner's claim,

28  petitioner allowed the limitations period to lapse before raising such a contention.

1    In summary, petitioner filed the instant petition several years after the expiration of the

2  statute of limitations.  The petition accordingly must be dismissed with prejudice as untimely.  *See*

3  28 U.S.C. § 2244(d)(1).

4                                             **CONCLUSION**

5    Accordingly, for the reasons stated, respondent respectfully requests that the petition for

6  writ of habeas corpus be dismissed with prejudice as untimely.

7    Dated:  June 9, 2008

8                              Respectfully submitted,

9                              EDMUND G. BROWN JR.
                             Attorney General of the State of California

10                             DANE R. GILLETTE
                             Chief Assistant Attorney General

11                             GERALD A. ENGLER
                             Senior Assistant Attorney General

12                             PEGGY S. RUFFRA
13                             Supervising Deputy Attorney General

14

15                             /s/ Gregory A. Ott
                             GREGORY A. OTT
16                             Deputy Attorney General

17                             Attorneys for Respondent

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:     **Morris v. Walker, Warden**

No.:     **C 08-2005 PJH (PR)**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the
California State Bar, at which member's direction this service is made.  I am 18 years of age or
older and not a party to this matter; my business address is 455 Golden Gate Avenue, Suite
11000, San Francisco, CA  94102-7004.

On June 9, 2008, I served the attached

**MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS AS UNTIMELY**

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid,
in the United States Mail at San Francisco, California, addressed as follows:

Marlon Morris
P-96526
CSP-Sacramento
C-4-116
P.O. Box 290066
Represa, CA 95671-0066

I declare under penalty of perjury under the laws of the State of California the foregoing is true
and correct and that this declaration was executed on June 9, 2008, at San Francisco, California.

| S. Agustin | /s/ S. Agustin |
|:---:|:---:|
| Declarant | Signature |

20115319.wpd

# EXHIBIT A

Filed 9/9/02

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

COPY

California Rules of Court, rule 977(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 977(b). This opinion has not been certified for publication or ordered published for purposes of rule 977.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIRST APPELLATE DISTRICT

### DIVISION ONE

SF-2001A-033

FILED
Court of Appeal - First App. Dist.

SEP 0 9 2002

RON D. BARROW, CLERK
By _____
DEPUTY

| | |
|---|---|
| THE PEOPLE, | |
|     Plaintiff and Respondent, | |
| v. | A093099 |
| MARLON MORRIS, | (San Francisco County |
|     Defendant and Appellant. | Super. Ct. No. 175064/1843125) |

     Marlon Morris appeals his convictions of one count of carjacking (Pen. Code, § 215[1]) and two counts of second degree robbery (§ 212.5). The jury also found true, with respect to one of the robbery counts, an enhancement pursuant to section 12022, subdivision (b), and allegations of a prior conviction for robbery, for which he served a prison term (§§ 667, subds. (a)(1), (d), (e); 1170.12, subds. (b)(c); 667.5 subd. (b)). The court sentenced appellant to prison for a total term of 27 years, and four months.

     We shall affirm the judgment.

### FACTS

     At 5:15 p.m., on March 13, 1999, Carlos Aviles went to retrieve his wallet from his light brown Mazda Protégé, license number 3GCZ942, which was parked in a lot at Fifth and Folsom in San Francisco. He was approached by a man asking for change. He described the man as a 27 to 35 years old African American male with short, almost fully shaved hair, who was approximately 5 feet 10 inches tall, and weighed approximately

---

[1] All subsequent statutory references are to the Penal Code unless otherwise indicated.

/3

165 pounds.[2] The man refused to take no for an answer, and followed Aviles to his car. After Aviles was seated in the car with the key in the ignition, the man gestured as if he was going to break the window. When Aviles opened the car door to talk to him, the man grabbed Aviles's sunglasses. Aviles got out of the car, demanding that the man return his sunglasses. As Aviles dialed 911, on his cellular telephone, the man got into his car and drove off.

On March 24, 1999, Aviles took two seconds to pick appellant's photograph out of a photo lineup, because he recognized him immediately, and he also identified appellant at trial.

The next day, March 14, 1999, Annie Chann was walking to church, when an African American male in his late 20's or 30's, with closely shaved hair, approximately 5 feet 9 or 10 inches tall, and weighing 160 to 175 pounds, grabbed her purse. He was holding a small switch blade, which he pointed at her head. She let go of her purse, and watched the man run toward a four door beige Geo Prism. She memorized the license plate, and a few minutes later wrote down the number, 3CGZ794.[3]

On March 24, 1999, Chann selected appellant's picture from a photographic lineup. Chann testified that Inspector Maloney told her to select a picture only if she "was pretty confident that that person was . . . the person that robbed me." She eliminated four of the six photographs, "pretty easily," within two to three minutes, and set them aside. After examining the last two, she selected the photograph of appellant because of the round face and the size of the eyes. She told the Inspector that the photograph was the closest image to her recollection of the robber's appearance. She did not say she was 100 percent certain, or that this was the robber. When asked at trial why she put her name on the back of the photograph, she stated "I believe that was the picture

---

[2] It was stipulated that appellant was born in 1969, is 5 feet 9 inches tall, and weighed 197.5 pounds as of March 3, 2000.

[3] This plate number was registered to a person named Sherrien Greene, with an address near Fresno, and was cleared of any involvement in the robberies.

of Mr. X."[4] At trial, she identified appellant as a person who looked similar to the person who robbed her, except that appellant now had longer hair, moustache, and appeared a little darker.

On March 14, Maria-Therese Bianco was out for a walk, when she was approached by a 25 to 30-year-old African American male, with a shaved head and stocky-build, approximately 5 feet 7 inches tall and 176 to 187 pounds. He grabbed her purse, and Bianco chased him as he ran to his car. She reached into the car, and tried to grab her purse back. The man hit her, and drove forward, opening and closing the car door in an attempt to shake her off. Bianco fell, and hit her head on the street. She described the car as a four door sedan, medium blond in color. Don Reznicek, a neighbor, saw Bianco being dragged down the street, and described the car as a dark gold sedan and identified part of the license plate as 3GC. Bianco also selected appellant's picture from a photographic lineup on March 24, 1999, and identified him in court. The picture exactly matched the image of the robber she had in her head.

Appellant was arrested in Aviles's car, license plate number 3GCZ842, after the police traced several parking tickets to it.

Inspector Maloney testified that he used a computer to compile the photographic lineup he showed to Aviles, Chann, and Bianco. He also gave all three of them a written admonition form, which stated that the person who robbed them might not be among the photographs, and that they were under no obligation to choose any of the photographs shown to them. He made notations on the back of the photographs each victim selected. With respect to Aviles, his notation stated that Aviles made an "immediate I.D., two seconds after prints all down, guy right here," and said, "I'm positive, he looks the same as he looked that day." As to Bianco he noted that her identification took "15 seconds . . . because of the look in his eyes being the same . . . and also the same shape of his face, she is quite sure." With respect to Chann, Maloney noted: "Ms. Chann eliminated all pictures except the signed photo based upon his eyes and roundness of his face." Maloney recalled that she had, at first, narrowed the photographs down to two, before

---

[4] In the context of this questioning, "Mr. X" referred to the person who robbed her.

finally selecting one, and although he had not written it in his notes, he believed that three minutes was a fair estimate of the time involved.  He also testified that he uses the term "positive identification" to encompass a range of degrees of certainty, that there were differences among the three witnesses on the degree of certainty, but each had been confident enough to select appellant's photograph, and put his or her name on the back.

## I.

### Exclusion of Testimony of Watkins and Chen

The court excluded the testimony of two witnesses, Sarah Watkins and Yuen Chen.  These witnesses had participated in photographic lineups conducted by Inspector Maloney in an unrelated case.  According to appellant, they would have testified that they had informed Maloney "that they were certain the person in that photograph *looked like* the person *but wasn't the person*,"  and that Maloney failed to include these exculpatory details in his notes.

Appellant contends the testimony of Watkins and Chen was relevant and admissible to prove that Inspector Maloney acted in conformity with his character by omitting relevant exculpatory facts in his notation on the back of the photograph selected by Chann, and to impeach his credibility.  (*People v. Memro* (1985) 38 Cal.3d 658, 681; Evid. Code, §§ 1101, subd. (b); 1103, 1105.)  He argues that the proffered evidence was highly probative of a material issue in the case, i.e., the identification of appellant by Ms. Chann in the photographic lineup, and it was an abuse of discretion to exclude it either as irrelevant, or pursuant to Evidence Code section 352.  (See, e.g., *Andrews v. City and County of San Francisco* (1988) 205 Cal.App.3d 938 [court abused its discretion to exclude evidence of similar misconduct by police officer on grounds of undue consumption of time where evidence was relevant to central disputed issue, and court did not consider less drastic alternative of limiting number of witnesses, or of specific instances].)

Appellant's argument is premised upon two assertions: i.e. (1) that Chann testified she did not, after viewing the photographic lineup, identify appellant as the person who robbed her; and (2) that Maloney exaggerated the degree of certainty with which Chann

4

had made the identification, or failed to disclose the details regarding the amount of time she took to make her selection.

The trial court, in explaining its reasons for excluding the proffered evidence correctly observed that there was *no conflict* between Maloney's testimony, and Chann's, concerning the details of her selection of appellant's photograph, or her degree of certainty in selecting the photograph: They both testified that she took several minutes to eliminate four of the photographs, and that after narrowing down to two photographs, she selected the photograph of appellant. Appellant's contention that a conflict existed as to the accuracy of Maloney's report that Chann positively identified appellant is based upon his assertion that Chann implicitly *denied* that she believed the photograph was of the person who robbed her by testifying that she told Maloney that the photograph of appellant most *closely resembled* the robber. Chann, however, also testified that Maloney told her to select a photograph only if she were "pretty confident" that the person depicted was the robber, and that she signed the back of the photograph *because she believed that it depicted "Mr. X,"* i.e., the person who robbed her. Chann also reviewed Maloney's notes and confirmed that the statement that she eliminated all pictures except the signed photo based upon his eyes and roundness of his face, accurately described what took place in her meeting with Mahoney.

Nor did Maloney testify that Chann was 100 percent certain that she had selected the correct photograph, or fail to disclose any statements by her that she was not sure. Maloney testified that his notation that a witness has made a "positive identification" encompassed varying degrees of certainty, and that it meant only that Chann was sufficiently certain to select a photograph, and sign her name on the back.

In the absence of a conflict between Chann's and Maloney's testimony, concerning the arguably exculpatory details of her selection of appellant's photograph, or testimony by Chann that she did not believe that the person in the photograph she selected was the robber, the trial court reasonably concluded that the mere omission from Maloney's notes of the detail as to the amount of time it took Chann to make her selection was immaterial, or at best a collateral issue, in the case. As the court explained,

5

"even if the jury believes that he intentionally omitted from the photos signed by Ms.
Chann the fact of the three minutes [to eliminate four of the photographs] . . . so what?
He never told her . . . [to] tell everybody that it was quicker.  He never came to court and
said it was an instant identification, and Ms. Chann came in here and told us how long it
took."  The court then weighed against the marginal probative value of this evidence, the
potential prejudice and confusion that would be caused by introducing evidence of
unrelated police misconduct, and the likelihood that its admission would result in undue
consumption of time, on collateral issues.  Had there been an actual credibility contest
between Maloney and Chann, the evidence that Maloney had omitted exculpatory details
or misrepresented the facts of an out-of-court identification in another case would have
been important to the resolution of that conflict, and the consumption of time necessary
to establish these facts would arguably have been worthwhile.

The absence of any conflict between Chann's testimony and that of Inspector
Maloney, or of the need to resolve a credibility contest between them distinguishes this
case from *People v. Castain* (1981) 122 Cal.App.3d 138, and *Andrews v. City and County
of San Francisco, supra*, 205 Cal.App.3d 938, both cases in which the court held it was
an abuse of discretion to exclude evidence of specific instances of prior police
misconduct.  In *Chastain*, the defendant's claim of excessive force by an arresting officer
was central to his defense against a charge of a battery and resisting arrest, and the officer
*denied* that he used excessive force.  (*People v. Castain, supra*, 122 Cal.App.3d 138, 141,
143.)  Similarly in *Andrews v. City and County of San Francisco, supra*, 205 Cal.App.3d
938, the plaintiff brought a civil action against the city, and a police officer for, among
other things, false arrest, and assault and battery.  The officer and the plaintiff told
"diametrically opposite" stories regarding a confrontation and physical struggle at the
booking counter that resulted in injuries to the plaintiff, (*id.* at p. 945) and the officer
testified that " 'as a general rule' " he exercised great patience in dealing with arrested
persons.  (*Id.* at pp. 944-947.)  In contrast, here, even if we accept, arguendo, appellant's
characterization of Chann's testimony as an inability to identify appellant at trial, the jury
still did not have to decide whether it should believe Chann, or Maloney, because there

simply was no disagreement in their testimony concerning her selection of appellant's photograph in a photographic lineup.

Therefore, the court was well within its discretion to conclude, instead, that the proffered testimony, was either irrelevant, or at best marginally probative of collateral issues, and that its admission would serve primarily to delay the proceedings, and possibly confuse, or prejudice, the jury.

In any event, any error was harmless. Even if appellant had proved that Maloney exaggerated Chann's degree of certainty by intentionally omitting details of how she selected the photograph, she did select appellant's photograph, and she testified that she did so because she believed it depicted the man who robbed her. Moreover, despite Chann's somewhat equivocal in-court identification of appellant, the other victims were unequivocal in both their out-of-court, and in-court, identification of appellant. The similarities in the description of the robber, the car, and the license plate number, by all the witnesses, overwhelmingly pointed to the conclusion that the same person who robbed Aviles, and Bianco, robbed Ms. Chann. Even if credited by the jury, the proffered evidence would not have refuted the fact of Chann's out-of-court identification of appellant, or contradicted Chann's own testimony concerning the details of how, and why she selected appellant's photograph. Therefore, it is not reasonably probable that admission of the testimony of Watkins and Chen would have produced a result more favorable to appellant. (*People v. Watson* (1956) 46 Cal.2d 818, 836.)[5]

## II.

### CALJIC NO. 17.41.1

Appellant's remaining contention that that CALJIC No. 17.41.1 violates the defendant's constitutional right to a fair and impartial jury, and to a unanimous verdict, is

---

[5] The exclusion of the proffered evidence did not deprive appellant of due process by excluding evidence material to his defense, because Chann's and Maloney's testimony presented the arguably exculpatory details regarding Chann's identification to the jury, and the court ruling did not preclude appellant from relying upon them in attacking the strength of her out of court, and in court, identification of him. (Cf. *Crane v. Kentucky* (1986) 476 U.S. 683, 690 [due process rights may be violated when the court excludes evidence that is central to the defendant's claim of innocence].)

disposed of by the recent decision of our Supreme Court, in *People v. Engelman* (2002)
28 Cal.4th 436, which held that the instructions did not violate these constitutional rights.

## CONCLUSION

The judgment is affirmed.

_____
Stein, Acting P.J.

We concur:


_____
Swager, J.


_____
Margulies, J.


(P. v. Morris - A093099)

# EXHIBIT B

Court of Appeal, First Appellate District, Division One - No. A093099
**S110882**

# IN THE SUPREME COURT OF CALIFORNIA

## En Banc

THE PEOPLE, Plaintiff and Respondent,

v.

MARLON MORRIS, Defendant and Appellant.

Petition for review DENIED.

SUPREME COURT
**FILED**

NOV 2 0 2002

Frederick K. Ohlrich, Clerk

—————————————
DEPUTY

DOCKETED
SAN FRANCISCO

NOV 2 1 2002

By L. CARAMANZANA
No. S1-2001DA-0335

GEORGE

—————————————
Chief Justice

# EXHIBIT C

# CALIFORNIA APPELLATE COURTS
## Case Information

Welcome

Search

E-mail

Calendar

Help

Opinions

C|C
home

## 1st Appellate District

Change court ▾

Court data last updated: 06/03/2008 10:05 AM

**Case Summary    Docket    Scheduled Actions    Briefs
Disposition    Parties and Attorneys    Trial Court**

## Docket (Register of Actions)

**In re Morris on Habeas Corpus.**
**Division 1**
**Case Number A118974**

| Date | Description | Notes |
|------|-------------|-------|
| 09/06/2007 | Petition for a writ of habeas corpus filed. | |
| 09/06/2007 | Order denying petition filed. | s,sw |
| 09/06/2007 | Case complete. | |
| 03/18/2008 | Shipped to state retention center, box # / list #: | L274 |

**Click here** to request automatic e-mail notifications about this case.

© 2007 Judicial Council of California

# EXHIBIT D

# CALIFORNIA APPELLATE COURTS

## Case Information

Supreme
Court

Welcome

Search

E-mail

Calendar

Help

Opinions

C|C
home

## Supreme Court

Change court

Court data last updated: 06/03/2008 09:53 AM

**Case Summary**   **Docket**   **Briefs**
**Disposition**   **Parties and Attorneys**   **Lower Court**

## Docket (Register of Actions)

**MORRIS (MARLON) ON H.C.**
**Case Number S156650**

| Date | Description | Notes |
|------|-------------|-------|
| 09/26/2007 | Petition for writ of habeas corpus filed | by Marlon Morris, petitioner in Pro Per. |
| 03/12/2008 | Petition for writ of habeas corpus denied | Moreno, J., was absent and did not participate. |

**Click here** to request automatic e-mail notifications about this case.

©2007 Judicial Council of California